UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALLEN WAYNE RIGGS                                           **Plaintiffs**

v.                                              Civil Action No. 3:22-cv-456-RGJ

TROOPER JAMES WRIGHT, in his                                **Defendants**
individual capacity, et al.,

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendants Trooper James Cameron Wright ("Wright") and Trooper Travis Dalton ("Dalton"), in their individual capacities, move to dismiss the First Amendment Complaint [DE 41] pursuant to Fed. R. Civ. P. 12(b)(6). [DE 42]. Defendant Trooper Brad Holloman ("Holloman") filed an unopposed motion to join in Wright's motion to dismiss. [DE 48]. Plaintiff Allen Wayne Riggs ("Riggs") responded to the motion to dismiss, and Defendants replied. [DE 51; DE 54]. This motion is ripe.

Additionally, Holloman filed an individual motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(4) & (b)(5). [DE 49]. Riggs Responded. [DE 50]. Holloman did not file a reply and the time to do so has passed. This motion is also ripe. For the reasons explained below, Defendant Holloman's motion to join [DE 48] is **GRANTED** and his motion to dismiss [DE 49] is **DENIED**. Defendants' joint motion to dismiss [DE 42] is **GRANTED in Part** and **DENIED in Part**.

I.        **Factual and Procedural Background**[1]

On February 22, 2022, Riggs was sitting on his couch, next to his wife Aurora Riggs, recovering after spending several days in the hospital. [DE 41 at 243.]. Riggs asserts that after hearing commotion outside, he opened his front door to investigate the noise. [*Id.*]. He alleges that without his contacts, he could only see a blurry group of individuals approaching his door. [*Id.* at 244-45]. He asserts that because he was not expecting anyone besides his father, he turned back inside, locked the door and attempted to call his father. [*Id.*]. Before he could place the call, he alleges that he heard banging on the side of his trailer home and an individual stating "police, open up!" [*Id.*]. Riggs asserts that he then attempted to call the police on his cell phone to confirm the identity of these individuals, but, before he could dial 911, one of the Defendants "kicked in [the] front door." [*Id.*].

He alleges that Defendants "had their guns drawn" and demanded Riggs walk to the front door. [*Id.*].  He further asserts that Defendants entered the home and "pulled [Riggs] outside" onto the porch. [*Id.*]. Riggs states that Defendants then "slammed" him onto his stomach, and "while one Defendant handcuffed Riggs, Wright "punched Mr. Riggs in the face and neck multiple times." [*Id.*]. He also alleges that Holloman "punched Mr. Riggs in the legs and torso." [*Id.*]. Riggs asserts that he did not "resist arrest." [*Id.*]

Riggs alleges that Defendants put him into a chair on his porch and then "illegally entered Mr. Riggs' home without a warrant or consent." [*Id.* at 246]. After the search of Riggs' home, Riggs requested medical attention for his sustained injuries. [*Id.*]. Wright and Dalton took Riggs to Baptist Hospital, but "he remained handcuffed while in the care of Baptist Hospital." [*Id.*]. He

---

[1] The Court accepts facts in the operative Complaint as true for the present Motion.  When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).

further alleges that Holloman continued to search Riggs' home and question his wife while he was at the hospital. [*Id.*]. Riggs asserts that "Defendants fractured [Riggs'] jaw in three places and fractured his skull" and that he needed "two teeth pulled" from the damage to his jaw. [*Id.*].

Riggs was later charged, and pleaded guilty, to: Second Degree Fleeing or Evading Police (KRS 520.100); Second Degree Disorderly Conduct (KRS 525.060); Two Counts of Menacing (KRS 508.050); Resisting Arrest (KRS 520.090); Tampering With Physical Evidence (KRS 524.100); Cultivation of Marijuana (218A.1423); First Degree Illegal Possession of a Controlled Substance Methamphetamine (KRS 218A.1415); Illegal Possession of Drug Paraphernalia (KRS 218A.500); Possession of Marijuana (218A.1422). [*Id.* at 246-47; DE 42 at 258].

Riggs filed a pro se complaint. [DE 1]. On initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) the complaint was dismissed in part. [DE 12]. On July 24, 2024, the Court appointed Rick Adams and Michael Abate[2] to serve as counsel for Riggs. [DE 36]. Counsel completed service and filed for leave to amend Riggs' Complaint, which the Court granted. [DE 37; DE 38; DE 40; DE 41].

The First Amended Complaint alleges four causes of action: (1) 42 U.S.C. §1983 claim for use of excessive force in violation of the Fourth Amendment against all Defendants; (2) 42 U.S.C. §1983 claim violation for an illegal search in violation of the Fourth Amendment against all Defendants; (3) 42 U.S.C. § 1983 claim for failure to intervene in violation of the Fourth Amendment against Dalton; and (4) a state law battery action against all Defendants. [DE 41 at 247-51].

---

[2] The Court appointed Adams and Abate to serve as pro bono counsel for Riggs as discovery disputes were starting to arise between the parties. Therefore, pursuant to the Western District of Kentucky Pro Bono Civil Case Protocol, Adams and Abate were appointed to serve as counsel for Mr. Riggs. [DE 36 at 225-26].

Wright, Dalton and Holloman move to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(6). [DE 42; DE 48]. Holloman also moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(4) & (b)(5). [DE 48].

## II.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Dismissal under Rule 12(b)(6) is warranted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Rather, to determine whether the plaintiff set forth a "plausible" claim, the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064

(6th Cir. 1994). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### III. Discussion

#### A. Defendant Holloman's Motion to Dismiss Pursuant to 12(b)(4) & (b)(5)

##### i. Standard

Federal Rule of Civil Procedure 4(m) requires service to be "served within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* This requires a two-part analysis by the courts. First, the court must determine "whether the plaintiff has shown good cause for the failure to effect service." *Stewart v. Tenn. Valley Authority*, 238 F.3d 424, 2000 WL 1785749, at *1 (6th Cir. 2000). If so, the "court shall extend the time for service for an appropriate period." Fed. R. Civ. P. (4)(m). Yet, even if the plaintiff has not shown good cause, the court must "either (1) dismiss the action or (2) direct that service be effected within a specified time." *Stewart*, 2000 WL 1785749, at *1. "In other words, the court has discretion to permit late

service even absent a showing of good cause." *Id.* "The determination of good cause is left to the sound discretion of the court." *Habib v. Gen. Motors Corp.,* 15 F.3d 72, 73 (6th Cir. 1994). In deciding to exercise its discretion, courts consider:

> (1) a significant extension of time is required;
> (2) an extension of time would cause actual prejudice to the defendant other than the inherent prejudice in having to defend the lawsuit;
> (3) whether the defendant had actual notice of the lawsuit;
> (4) whether dismissal of the complaint without prejudice under Rule 4(m) would substantially prejudice the plaintiffs, i.e., cause the plaintiffs' suit to be time-barred by the statute of limitations; and
> (5) whether the plaintiffs have made diligent, good faith efforts to effect proper service of process.

*Raytheon Co. v. Ahtna Support & Training Servs., LLC*, 2021 WL 3038888, at *1 (W.D. Ky. July 19, 2021).

Generally, the plaintiff is responsible for effecting service. Fed. R. Civ. P. (4)(c)(1). But, if a plaintiff is proceeding in forma pauperis, it is assumed the plaintiff "cannot afford to hire a process server." *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). In those situations, the court "must appoint a United States Marshal to serve plaintiff's process." *Id.* That United States Marshall "must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint." *Id.*

ii. Analysis

Defendant Holloman moves the Court to dismiss the First Amended Complaint because "Trooper Brad Holloman was never served within ninety days of the filing of the complaint per FRCP (4)(m)." [DE 49 at 407]. After the case was referred to a Magistrate Judge on May 18, 2023, the Clerk issued summons for each defendant. [DE 49 at 411]. However, the "United States Marshall Server was unable to serve Trooper Holloman." [*Id.*]. This is because "Holloman was on

6

military duty for a year and was unavailable." *Id.* Both other Defendants were "timely served without issue." [DE 50 at 419].

"The failure of the clerk and the Marshals Service to accomplish their respective duties to issue and serve process for [the plaintiff] proceeding in forma pauperis constitutes a showing of good cause under Fed. R. Civ. P. 4." *Byrd*, 94 F.3d at 220. The Sixth Circuit has joined other circuits in ruling that demonstrating the failure by the clerk and Marshals Service constitutes good cause. *See Dumaguin v. Sec. of Health & Human Servs.*, 28 F.3d 1218, 1221 (D.C. Cir. 1994); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990). Because Riggs demonstrated that the Marshals Service failed to complete their duties, the Court finds that good cause has been satisfied and need not examine the discretionary factors described above. Therefore, the "court *shall* extend the time for service for an appropriate period." Fed. R. Civ. P. (4)(m) (emphasis added).

After appointment on July 24, 2024, Riggs asserts counsel "worked *diligently* to serve Holloman in a reasonable timeframe." [DE 36; DE 49 at 424] (emphasis added). Counsel first attempted to serve Holloman on September 18, 2024. [DE 46 at 391]. However, on October 4, 2024, Counsel realized that the papers served to Holloman were not the ones issued and signed by the clerk. [*Id.*]. As a result, Riggs' Counsel asked for Holloman's Counsel to accept service via email. *Id.* She accepted. *Id.* Thus, service was proper on October 4, 2024. [DE 46-2 at 394-95]. Because good cause was demonstrated, the court "shall" extend the time for service. Fed. R. Civ. P. (4)(m). Because Counsel worked "diligently," to serve Holloman the Court "decline[s] to hold plaintiff responsible for" the failure to effect timely service of his original complaint. *Byrd*, 94 F.3d at 220. The Court **DENIES** Holloman's motion to dismiss for 12(b)(4) & 12(b)(5). [DE 48].

### B. Defendants' Motion to Dismiss Pursuant to 12(b)(6)

#### i. Excessive Force

Defendants assert that Riggs' claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). [DE 42 at 256]. The *Heck* doctrine represents the proposition that there is no valid cause of action under 42 U.S.C. § 1983 when establishing the basis of the claim would "necessarily demonstrate[] the invalidity of [a] conviction" and that conviction has not been reserved, expunged, or otherwise invalidated. *Heck*, 512 U.S. at 486-87, 489.

#### 1. *Standard*

A § 1983 plaintiff seeking damages for a "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" must prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. Otherwise, that plaintiff's claim is not "cognizable under § 1983." *Id.* "But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.*

The court reviewing a *Heck* assertion must "look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (quoting *Swiecicki v. Delgago*, 463 F.3d 489, 493 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007)). "The mere fact that the conviction and the § 1983 claim arise from the same set of facts is irrelevant if the two are consistent with one another." *Id.* In the excessive force context, when the alleged force occurs after the completion of the arrest, "civil liability would not necessarily undermine a resisting conviction

and therefore *Heck* wouldn't bar the § 1983 suit." *Spurlin v. Kromer*, 2024 WL 4151173, at \*2 (W.D. Ky. Sep. 11, 2024).

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham*, 490 U.S. at 394. Generally, "[t]he Fourth Amendment's prohibition against unreasonable seizures bars excessive force against free citizens . . . while the Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons," and the Fourteenth Amendment bars excessive force when neither category applies. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citations omitted).

Courts "analyze claims that an officer used excessive force when arresting a person under the Fourth Amendment's objective reasonableness standard." *Reed v. Campbell Cnty., Kentucky*, 80 F.4th 734 (6th Cir. 2023) (citing *Graham*, 490 U.S. at 388). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. The court must pay "careful attention to the facts and circumstances of each particular case," *id.*, and "consider the difficulties of modern police work," *Smith v. Freland*, 954 F.2d 343, 346 (6th Cir. 1992), when evaluating whether a police officer acted reasonably during an arrest. A court must consider the totality of the circumstances when evaluating the objective reasonableness of the arrest. *Smith v. City of Troy, Ohio*, 874 F.3d 938, 943 (6th Cir. 2017). This should be done "without regard to [the officers'] underlying intent or motivation." *Reed*, 80 F.4th 734. Three important but non-exhaustive factors guide this analysis: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight." *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (citing *Graham*, 490 U.S. at 396). Courts are instructed to "review the actions of each officer separately" and "review separately each use of force by the same officer." *Reed*, 80 F.4th 734.

### 2.    Analysis

Riggs alleges that "[w]*hile* a Defendant handcuffed Mr. Riggs, Defendant Wright punched Mr. Riggs in the face and neck multiple times. Defendant Holloman punched Mr. Riggs in the legs and torso." [DE 41 at 245] (emphasis added).[3] Riggs was later charged, and pleaded guilty, with resisting arrest pursuant to KRS 520.090. [*Id.* at 247.] Defendants state that because "excessive force is a defense to resisting arrest, Riggs' conviction bars his claims of excessive force." [DE 42 at 260]. In response, Riggs cites to both *Donovan v. Thames*, 105 F.3d 291 (6th Cir. 1997) and *Gonzalez v. Lusardi*, 930 F.Supp. 2d. 840 (E.D. Ky. 2013). In *Donovan*, the Sixth Circuit stated that "Under Kentucky law, the offense of resisting arrest does not require a finding that the police officers did not use excessive force in effectuating the arrest." *Donovan*, 105 F.3d at 295. In *Gonzalez*, the court stated that "[b]ecause the lack of excessive force is not an element to a resisting arrest or disorderly conduct charge under Kentucky law, the *Heck* doctrine does not apply." *Gonzalez*, 930 F.Supp. 2d. at 852.

However, courts within this district have held otherwise. They have done so by examining both the *commentary and the affirmative defenses* to a plaintiff's charge of resisting arrest and the

---

[3] Although the Court focuses on the segment of force "while" being handcuffed, the same analysis would apply to force during the "pre-cuffing" period, such as when Riggs is allegedly "slammed" into the ground. *Spurlin*, 2024 WL 4151173, at *2 ("To the extent [Plaintiff's] pleadings suggest the officers used excessive force before they cuffed him, *Heck* would undoubtedly bar any claim on those facts. Spurlin pled guilty to resisting arrest."); *Burke*, 2021 WL 2418574, at *1 (holding that Plaintiff's entire Fourth Amendment claim is barred by *Heck*, which includes being brought "to the ground" by the officer which caused the Plaintiff's "face to hit the concrete" multiple times.).

applicable statute, KRS 520.090. The court in *Gonzalez* did *not* perform this analysis. In *Gonzalez*, in finding that the plaintiff's excessive force claim was not barred by *Heck,* the court only examined the elements of resisting arrest, not any potential affirmative defense. *Gonzalez*, 930 F.Supp. 2d. at 852.  In *Schreiber*, the Sixth Circuit stated that there are two circumstances when an excessive force claim could conflict with a state conviction, "when the criminal provision makes lack of excessive force an element of a crime [or] when *excessive force is an affirmative defense to the crime*." *Schreiber*, 596 F.3d at 334 (emphasis added). And "[u]nder the commentary to KRS 520.090, an affirmative defense to a plaintiff's charge of resisting arrest is 'where the officer used more force than is reasonably necessary to effect the arrest so that his conduct constitutes an assault on the person arrested.'" *Dobson v. Sandidge*, 2021 WL 707657, at *2 (W.D. Ky. Feb. 23, 2021) (quoting *Schreiber*, 596 F.3d at 334)). In *Dobson*, the court stated that "a favorable judgment on Plaintiff's excessive force claim could provide a defense to her charge under Kentucky law." *Id.* at *3. Other courts within this jurisdiction have come to the same conclusion. *See Settles v. McKinney*, 2013 WL 5346503, at *3 (W.D. Ky. Sept. 23, 2013); *Burke v. Forbis*, 2021 WL 2418574, at *3 (W.D. Ky. June 14, 2021) (holding that because plaintiff's "claim of excessive force" could have been brought as an affirmative defense, "*Heck* bars [plaintiff's] § 1983 excessive-force claim"); *Capuano v. Crane*, 2025 WL 223778, at *3 (W.D. Ky. Jan. 16, 2025) (holding that because "success on Plaintiff's Fourth Amendment excessive-force claim would legitimize an affirmative defense on the resisting-arrest charge for which he was convicted" the claim is "barred by Heck and must be dismissed for failure to state a claim upon which relief may be granted.") Therefore, although excessive force may not be an element within resisting arrest under KRS 520.090, it is still "an affirmative defense." *Schreiber*, 596 F.3d at 334.

Yet, in certain situations, when the "alleged force occurred *after* the resistance and the completion of arrest," civil liability may not necessarily undermine an existing conviction. *Spurlin*, 2024 WL 4151173, at *2. The court in *Spurlin* reviewed a similar situation in the lens of "pre" and "post" cuffing. *Id.* Here, Riggs alleges that the force occurred "[w]hile a Defendant handcuffed Mr. Riggs" and "after beating Mr. Riggs in the face, torso, and legs *while* handcuffing him." [DE 41 at 245] (emphasis added). In *Spurlin*, the court held that the term "while" constitutes "pre-cuffing" and found excessive force allegations during the "pre-cuffing" time period barred by *Heck*. *Spurlin*, 2024 WL 4151173, at *2 (holding that the "pre-cuffing" force "cannot possible support liability" because "*Heck* would undoubtedly bar any claims on those facts."). All Riggs' alleged assertions of excessive force occurred either before or "while" the handcuffing was occurring. [DE 41 at 245]. As a result, Riggs' Fourth Amendment claim for excessive force is barred by *Heck* and "must be dismissed for failure to state a claim upon which relief may be granted." *Spurlin*, 2024 WL 4151173, at *2 ("Success on Spurlin's pre-cuffing excessive-force claim would thus validate an affirmative defense on the resisting-arrest charge for which he was convicted. That means the claim is *Heck*-barred."); *Capuano*, 2025 WL 223778, at *3.

### ii. **Illegal Search**

#### 1. Standard

Because arrest warrants are not search warrants, in *Maryland v. Buie*, 494 U.S. 325 (1990) the Supreme Court identified two types of permissible "warrantless protective sweeps" following an arrest. *United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009) (citing to *Buie*, 494 U.S. at 334). "The first type allows officers to 'look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched.'" *Archibald*, 589 F.3d at 295 (quoting *Buie*, 494 U.S. at 334). And the second type of sweep allows officers to go "beyond"

immediately adjoining areas of the arrest but is limited "protecting the arresting officers[.]" *Id.* (quoting *Buie*, 494 U.S. at 334-35). The Court reviews each type of "sweep" under a different set of requirements:

> The first type of sweep requires no probable cause or reasonable suspicion, while the second requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." The Supreme Court also "emphasize[d]" that this second kind of sweep is "not a full search of the premises," but "extend[s] only to a cursory inspection of those spaces where a person may be found" and should last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises."

*Archibald*, 589 F.3d at 295 (citations omitted).

The Sixth Circuit has held that arrests on the "doorstep, front porch, [or] doorway" are an "outside" arrest." *Archibald*, 589 F.3d at 297 (citing to *United States v. Kinney*, 638 F.2d 941, n.2 (6th Cir. 1981)). Outside arrests fall under the more demanding requirements of the second type of *Buie* sweep. *Archibald*, 589 F.3d at 297. Therefore, to constitute a permissible sweep, the officers must demonstrate "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334.

Additionally, plaintiffs must demonstrate two elements to assert a proper § 1983 claim for damages from an illegal search under *Heck*. First, a plaintiff must demonstrate that the unlawful search does not necessarily imply the invalidity of the conviction. *Heck*, 512 U.S. 477, 487 n.7. And second, that the injury caused by the illegal search is separate from the conviction that has not been overturned. *Id.*

2.   Analysis

Riggs states that "Defendants. . .  violated Mr. Riggs' constitutional rights by illegally entering and searching Mr. Riggs' home without a warrant or consent." [DE 41 at 246]. Here, Riggs was arrested on his "front porch." [DE 41 at 245]. Defendants do not dispute either of these facts. Additionally, Defendant Holloman continued to search even as Riggs was at the hospital for his sustained injuries. [*Id.*].

And although "it is established that officers making an arrest" may "search spaces adjoining the place of arrest" the "sweep" "may last only as long as necessary." *Wilson v. Morgan*, 477 F.3d 326, 338 (6th Cir. 2007). It is uncontested that the troopers searched Riggs' home after the arrest was made outside the home. *See Archibald*, 589 F.3d at 297 (stating that the "front porch" is outside the home). [DE 41 at 245]. Further, it is uncontested that this continued even after Riggs was taken away and transported to the hospital. [DE 41 at 246]. It is plausible, without rebuttal from the Defendants at this stage in the litigation, that the search continued longer than "necessary." *Wilson* 477 F.3d at 338. In *Wilson*, the Sixth Circuit permitted a protective sweep because the facts presented provided an "articulable suspicion that a person possible posing a danger still lurked" at the residence. *Id.* Additionally, in *United States v. Bass*, the Sixth Circuit permitted a warrantless home search after police originally arrested an individual, but, were uncertain if the arrestee was "whom they were seeking."  315 F.3d 561, 564 (6th Cir. 2002) (holding that the police were therefore "justified, under these circumstances, in inspecting those spaces in the apartment where another person could have been hiding.") The facts here are unlike either situation presented as Riggs alleges that Defendants kicked in Riggs' door, arrested him, and continued to search his home well after he was gone. [DE 41 at 245-46].

The exact locations of the search, within the home, have not been described. Nor has the length. However, as the search continued well after Riggs was removed from the premises, and taken to the hospital, the Court finds at this stage that it is reasonable to find the search continued longer than "necessary." *Wilson* 477 F.3d at 338. Making all "permissible inferences therein" in favor of the plaintiff, it is plausible that Defendants searched his home in excessed of the bounds of the Fourth Amendment as stated in *Wilson* and *Archibald*.

Second, "Defendants assert that an "illegal search claim cannot be maintained if the damages are limited to the arrest." [DE 42 at 260]. And that "damages must be independent of the arrest in order to maintain the claim." [*Id.*]. Therefore, because "Riggs has failed to plead any separate damages related to the search of his home and as such, this claim must be dismissed" pursuant to *Heck*. [*Id.*at 261]. Riggs' states that not only does "*Heck* itself make clear that it does not categorically prohibit lawsuits for an allegedly unreasonable search[,]" as the claim may even continue even  "'if the challenged search produced evidence in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction.'" [DE 51 at 437 (quoting *Heck*, 512 U.S. 477 n.7)].

Riggs' claim for an illegal search should proceed as both elements stated above are satisfied. *Heck* stated that because of "doctrines like independent source and inevitable discovery. . . and especially harmless error. . . such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Heck*, 512 U.S. 477 n.7. However, "[i]n order to recover compensatory damages, [] the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury." *Id.* First, "even if evidence discovered in a search incident to his arrest was admitted at his federal trial, a determination that the search was illegal would not necessarily imply the invalidity of the conviction." *Braxton v. Scott*, 905

F.Supp. 455, 458 (N.D. Ohio 1995). Defendants have not contested this point emphasized by Riggs. Still, *Heck* could bar these claims if the "contested search produced the *only* evidence supporting the conviction and no legal doctrine could save the evidence from exclusion." *Holson v. Good*, 579 F. App'x 363, 365 (6th Cir. 2014) (quoting *Harper v. Jackson*, 293 F. App'x 389, 392 (6th Cir. 2008) (emphasis in original)). But Defendants do not assert this proposition. And at this stage in the litigation, the Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette,* 41 F.3d at 1064. As a result, prong one is satisfied.

And second, Riggs pleaded damages separate from his arrest. He states that "the officers dented the side of Riggs' trailer" and "kicked his front door off its hinges." [DE 41 at 245]. Taking the alleged facts as true at this stage in the case, there are damages unrelated to conviction and even unrelated to the excessive force claim. Defendants' motion to dismiss Riggs' claim for illegal search and seizure is denied.

### iii. Failure to Intervene

#### 1. Standard

To state a § 1983 claim for a failure-to-intervene, the plaintiff must allege that the defendant "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 Fed. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)) (internal quotation marks omitted).  This is true regardless of whether the individual violating the plaintiff's constitutional rights is a fellow officer or a supervisor.  *Smith v. Heath*, 691 F.2d 220, 224-26 (6th Cir. 1982).  Defendants cannot be held liable, however, unless there was "a realistic opportunity to intervene and prevent harm."  *Wells v. City of Dearborn*

*Heights*, 538 Fed. App'x 631, 640 (6th Cir. 2013) (internal quotation marks and citation omitted). A failure to intervene claim is "premised on an underlying constitutional violation." *Thomas v. Mayo*, 2024 WL 116424, at *6 (W.D. Ky. Jan. 10, 2024). And "[a]lthough most failure-to-intervene claims involve allegations of excessive force, the Sixth Circuit has extended the failure-to-intervene theory of liability beyond the excessive-force context." *Id.* (citing *Johnson v. Vill. Of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001).

2.   Analysis

Riggs' asserts that Dalton violated his constitutional rights by "failing to intervene" to prevent "Wright and Holloman from illegally beating [Riggs] in violation of his Fourth Amendment Rights." [DE 41 at 249]. Further, in Riggs' response, he states that his claim against Dalton is for "failing to protect [him] from another officer's use of excessive force." [DE 51 at 441]. Defendants assert that because "[Riggs'] excessive force claim was a defense to the conviction but not asserted by him, his assertion of a failure to intervene claim also fails as a matter of law." [DE 42 at 264].

The Court already disposed of the excessive force claim as it is barred by *Heck*. And although the "the Sixth Circuit has extended the failure-to-intervene theory of liability beyond the excessive-force context" it does not appear that this theory was alleged in the currently operative complaint. Plaintiff states in his response that, "Riggs—like all criminal Defendants—is constitutionally protected from unreasonable searches and seizures accomplished through use of excessive force and Dalton failed in his duty to intervene and prevent the deprivation of Riggs' rights." [DE 51 at 441]. Even assuming Plaintiff is attempting to claim a failure to intervene based upon an illegal search, this claim would still fail. The Court will not consider new allegations or legal theories in a response. *See Tucker v. Union of Needletrades, Indus., Textile Emps.*, 407 F.3d

17

784, 788 (6th Cir. 2005); *Perry v. Norton Hosp.*, *Inc.* 2023 WL 2755306, at *14 (W.D. Ky. Mar. 31, 2023) (applying the same in a motion for summary judgement). As a result, the Court will grant Defendant's motion to dismiss Plaintiff's failure to intervene claim.

### iv. **Battery**

The allegations for battery are near identical to the allegations for excessive force. Riggs states that the Defendants "forcibly removed him from his home, slammed him on the ground, and repeatedly punched him in the face, neck, torso, and legs." [DE 41 at 250].

By extension of the Court dismissing the excessive force, the Court will also dismiss Riggs' battery claim. *See Dobson*, 2021 WL 707657, at *2 (dismissing battery claim under *Heck* for the same reason as excessive force); *Lacer v. Pickard*, 2011 WL 2940721, at *2 (W.D. Ky. July 19, 2011) (holding the same).

### v. **Qualified Immunity**

#### 1.  Standard

[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although a[] [government official's] entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.

*Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (internal quotation and citations omitted).

There is no heightened factual showing that a plaintiff must make to survive a motion to dismiss on qualified immunity grounds that differs from the plausibility standard established under *Iqbal. Id.* at 427–28. Although qualified immunity does protect the defendant from all burdens of litigation, including "the burdens of discovery," *Iqbal*, 556 U.S. at 672 (citations omitted), the fact-intensive nature of a qualified immunity defense makes it "difficult for a defendant to claim

qualified immunity on the pleadings *before discovery*[.]" *Wesley*, 779 F.3d at 434(quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)) (emphasis in original).

Under Kentucky law, *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001) "provides the framework for deciding whether a public officer or employee is afforded immunity from tort liability." *Ritchie v. Turner*, 559 S.W.3d 822, 831 (Ky. 2018). Qualified immunity applies to the negligent performance of "(1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero*, 65 S.W.3d at 522 (citations omitted). However, it does not apply to "the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citation omitted).

"In evaluating a § 1983 claim, courts must assess whether (1) 'the allegations give rise to a constitutional violation' and (2) 'whether the right was clearly established at the time of the incident.'" *Walker v. Louisville/Jefferson Cnty. Metro Gov't*, 583 F. Supp.3d 887, 903 (W.D. Ky. 2022). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). Therefore, the Court must determine that when "reading the complaint in light most favorable to the plaintiff" is it "plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 899 (6th Cir. 2019).

2.  Analysis

Based upon the facts alleged within the First Amendment Complaint, the Court denies Defendants' claim for qualified immunity at this stage. Throughout the joint motion to dismiss, Defendants only state that "since the Trooper Defendants were performing discretionary acts in good faith that were within the scope of their authority and consistent with the law as explained above." [DE 42 at 266]. They repeat the legal standard again in their reply, but still do not apply the standard directly to the facts. [DE 54 at 453-54].

Therefore, "reading the complaint in light most favorable to the plaintiff" it is "plausible" that Defendants violated Riggs' clearly established constitutional rights when they allegedly illegally searched his home. Defendants broke down his door and performed a sweep, initially during the arrest, and the search continued even while Riggs remained at the hospital. [DE 41 at 246].  The burden to show a defendant is not entitled to qualified immunity is "not high at the 12(b)(6) stage." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023). Coupled with the fact "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity" the Court denies Defendants motion to dismiss based on qualified immunity. *Wesley* 779 F.3d at 433–34.

**IV.    Conclusion**

For the reasons stated above, the Court **ORDERS** that:

   i.   Defendant Holloman's unopposed motion for joinder [DE 48] be **GRANTED**.

   ii.  Defendant Holloman's motion to dismiss for 12(b)(4) & 12(b)(5) [DE 49] be **DENIED**.

   iii. Defendants' motion to dismiss Riggs' Claims for Excessive Force (Count I), Failure to Intervene (Count III), and Battery (Count IV) be **GRANTED**.

   iv.  Defendants' motion to dismiss Riggs' Claim for an Illegal Search (Count II) based upon either *Heck* or qualified immunity is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

September 24, 2025