UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALLEN WAYNE RIGGS                                                                                    Plaintiffs

v.                                                                                    Civil Action No. 3:22-cv-456-RGJ

TROOPER JAMES WRIGHT, in his                                                               Defendants
individual capacity, et al.,

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

In the First Amended Complaint [DE 41] Plaintiff Allen Wayne Riggs ("Riggs") asserted three 42 U.S.C. § 1983 causes of action, and one state cause of action, against the Defendants Trooper James Cameron Wright ("Wright"), Trooper Travis Dalton ("Dalton") and Trooper Brad Holloman ("Holloman"). Both parties filed motions for summary judgment. [DE 63; DE 66]. Riggs' moved for partial summary judgement [DE 63] and Defendants moved for summary judgment on all claims. [DE 66]. Both parties responded timely. [DE 72; DE 73]. And both parties replied timely. [DE 74; DE 75].

However, in this Court's Motion to Dismiss Order [DE 102] the Court dismissed Riggs' causes of action for excessive force, failure to intervene, and battery for failure to state a claim against the Defendants. Only the claim for an illegal search remains. Therefore, Riggs' motion for summary judgment [DE 66] is **DENIED AS MOOT** as no active claims remain pertaining to his motion. Moreover, the Court will review Defendants' motion for summary judgement only as it pertains to the illegal search claim and the defense of qualified immunity. For the reasons set forth below, the Defendants' motion for summary judgment [DE 63] is **DENIED**.

    **I.**    **Factual and Procedural Background**

The procedural background as set forth in the Court's Memorandum, Order and Opinion

1

on the Motions to Dismiss is incorporated by reference. On February 22, 2022, Riggs was resting at home with his wife, Aurora, after an extended stay at the hospital. [DE 66 at 670]. Holloman was dispatched to Riggs' residence to serve a license plate pick up because Riggs' car registration was cancelled. [DE 66-1, Wright Dep. 30: 2-6]. Prior to arriving, Holloman discovered Riggs had an outstanding bench warrant for failure to appear for an unrelated court proceeding. [*Id.* at 29:10-16; DE 66-2_, Holloman Dep. 42:15-20]. On arrival, Wright and Dalton surrounded the house from the back, while Holloman approached the door. [DE 66-1, Wright Dep. 35:21-25].

The parties dispute the timeline of knocking, alleged banging, and the opening of the door by Riggs. Riggs asserts that first, after Holloman knocked on the door, "Riggs answered" but quickly shut the door and "retreated" into his home. [DE 66 at 670]. Then, Holloman began "banging on the side" of the trailer, and allegedly caused permanent damage. [*Id.*]. According to Riggs' timeline, at this point, Holloman announced, *for the first time*, that he was with the Kentucky State Policy and "demanded" Riggs exit. [*Id*]. Wright then joined Holloman at the front, and while Riggs "began to dial 911" Holloman "kicked in the front door." [*Id.* at 671].

This contrasts with Defendants' timeline. Defendants assert that immediately on arrival, prior to knocking on the door, Riggs opened the door and stepped outside. [DE 63-1 at 482]. Then Defendants alleges Holloman announced himself stating, "Mr. Riggs, Kentucky State Police." But Riggs "slammed shut and locked the door." [*Id.*]. After that, Holloman "knocked" on the side of the trailer and announced himself to Riggs for a second time. [*Id.*].

The Troopers then "kicked" in the front door with weapons drawn because of the "unknown" of the inside of the house. [DE 66-1, Wright Dep. 37:1-14]. Upon the door being "kicked" in, Riggs was found to be sitting on his couch. [DE 66-2, Holloman Dep. 48:23-28]. Holloman and Wright told Riggs to walk to the front door, which he then did "slowly." [DE 66-1,

2

Wright Dep. 39: 7-12]. Wright, then either from inside the house or on the front porch, grabbed Riggs, put him onto the front porch, and struck him in the shoulders and face. [*Id.* at 41: 1-7; 43: 1-7]. After continuing to strike him, Holloman and Wright "forced" Riggs into handcuffs and left him on the front porch. [DE 66-2, Holloman Dep. 53:5-8].

While Riggs was on the front porch in handcuffs, Holloman searched the home where he found Aurora. [DE 66-1, Wright Dep. 49:10-14; DE 66-2, Holloman Dep. 54:21-24; 56:4-14]. Holloman and Wright both described the sweep as a "protective sweep." [DE 66-2, Holloman Dep. 54:24-25]. Wright states that he "cleared the house for officer safety." [DE 66-1, Wright Dep. 46: 8-16]. After finding, and subsequently removing Aurora from the house, Holloman and Wright returned to the house to continue the search. [DE 66-2, Holloman Dep. 57: 10-14]. Neither Holloman or Wright can confirm if either Riggs or Aurora consented to the search. [*Id.* at 57:19-24]. However, both parties agreed that there was no search warrant to enter the home, and both Wright and Holloman returned to the house "after the protective sweep." [DE 66-1, Wright Dep. 48:13-15; DE 66-2, Holloman Dep. 57:19-24]. After Wright and Dalton transported Riggs to the hospital, the sweep of the house was continued by Holloman. [DE 66-2, Holloman Dep. 58: 9-17]. The search uncovered marijuana and other drug paraphernalia, which led to the criminal charges and conviction. [DE 66 at 673; 63-1 at 483-84]. Riggs was ultimately charged with, and convicted of, Second Degree Disorderly Conduct (KRS 525.060); Second Degree Fleeing or Evading Police (KRS 520.100); Menacing, two counts (KRS 508.050); Resisting Arrest (KRS 520.090); Tampering With Physical Evidence (KRS 524.100); Cultivation of Marijuana (218A.1423); First Degree Illegal Possession of a Controlled Substance, Methamphetamine (KRS 218A.1415); Illegal Possession of Drug Paraphernalia (KRS 218A.500); Possession of Marijuana (KRS 218A. 1422). [DE 66 at 673; 63-1 at 483-84].

All parties moved for summary judgment, yet the Court only reviews the motions as to the illegal search claim and the defense of qualified immunity. Defendants moved for summary judgment on the illegal search [DE 63-1 at 492], but Riggs did not because "the record reflects dispute of fact on this claim." [DE 72 at 974, n.2].

## II.     Standard for Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ.

P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

**III.   Discussion**

    **a. Riggs' Motion for Summary Judgment**

Riggs' moves for partial summary judgment on his claims for excessive force, failure to intervene, and battery. [DE 66 at 670]. However, in this Court's previous order, we dismissed for failure to state a claim those three causes of action. [DE 102]. Article III requires "an actual controversy" to exist at "all stages of review" by a Court. *Unan v. Lyon*, 853 F.3d 279, 284-85 (6th Cir. 2017) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). But once "the issues presented are no longer 'live'" the action becomes moot. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Here, Riggs' actions for excessive force, failure to intervene, and state battery were dismissed in the Court's motion to dismiss order. Because those actions are no longer "live" his motion becomes moot. Therefore, the Court will deny his motion for summary judgment as **MOOT**.

### b. Defendants' Motion for Summary Judgment

Defendants moved for summary judgment on all claims. [DE 63 at 478]. For the reasons stated above, the Court will treat the motion for summary judgment as moot as it pertains to the excessive force, failure to intervene, and state battery claims. The Court will review the motion for summary judgement on the issue of the illegal search claim, and the defense of qualified immunity.

#### i. Riggs' Illegal Search Claim

Defendants move for summary judgement on Riggs' illegal search cause of action. [DE 63 at 493]. Defendants argue that based upon *Heck v. Humphrey*, the claim is barred. 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that there is no permissible cause of action under 42 U.S.C. § 1983 for damages when establishing that claim "necessarily demonstrates the invalidity of the conviction" when the conviction has not been reversed or invalidated. *Id.* at 486-89. Defendants do not interact with any other legal standard for an illegal search. Riggs did not move for summary judgment on this claim. He states that he "did not move for summary judgment on the illegal search claim because, unlike his excessive force claims, the record reflects disputes of fact on this claim." [DE 72 at 974 n.2].

##### 1. Standard

Because arrest warrants are not search warrants, in *Maryland v. Buie*, 494 U.S. 325 (1990) the Supreme Court identified two types of permissible "warrantless protective sweeps" following an arrest. *United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009) (citing to *Buie*, 494 U.S. at 334). "The first type allows officers to 'look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched.'" *Archibald*, 589 F.3d at 295 (quoting *Buie*, 494 U.S. at 334). And the second type of sweep allows officers to go "beyond" immediately adjoining areas of the arrest but is limited "protecting the arresting officers[.]" *Id.*

(quoting *Buie*, 494 U.S. at 334-35). The Court reviews each type of "sweep" under a different set of requirements:

> The first type of sweep requires no probable cause or reasonable suspicion, while the second requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." The Supreme Court also "emphasize[d]" that this second kind of sweep is "not a full search of the premises," but "extend[s] only to a cursory inspection of those spaces where a person may be found" and should last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

*Archibald*, 589 F.3d at 295 (citations omitted).

The Sixth Circuit has held that arrests on the "doorstep, front porch, [or] doorway" are an "outside" arrest." *Archibald*, 589 F.3d at 297 (citing to *United States v. Kinney*, 638 F.2d 941, n.2 (6th Cir. 1981)). Outside arrests fall under the more demanding requirements of the second type of *Buie* sweep. *Archibald*, 589 F.3d at 297. Therefore, to constitute a permissible sweep, the officers must demonstrate "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334.

Additionally, plaintiffs must demonstrate two elements to assert a proper § 1983 claim for damages from an illegal search under *Heck*. First, a plaintiff must demonstrate that the unlawful search does not *necessarily* imply the invalidity of the conviction. *Heck*, 512 U.S. 477, 487 n.7. And second, that the injury caused by the illegal search is separate from the conviction that has not been overturned. *Id.*

### 2. Analysis

In a motion for summary judgment, the movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. And "[t]he court must

7

view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497. Here, defendants fail to meet their burden. Defendants make primarily a legal argument under *Heck*, ignoring the other requirements of an illegal search claim. The purely legal argument is also near verbatim what the Defendants stated in their motion to dismiss. And as stated in their motion to dismiss, Defendants contend that "Riggs has failed to plead any separate damages related to the search of his home" compared to the excessive force claim. [DE 63-1 at 494]. And additionally, because "Mr. Riggs pled guilty to all of these charges. . . his action is barred by *Heck*." [*Id.*]. In response to this, Riggs asserts that "Defendants' evidence-free argument is wrong as a matter of law and fails to meet their burden to prove the absence of a genuine dispute of fact related to the illegal search claim." [DE 72]. In Defendants' reply [DE 75] they do not address Riggs' arguments at all. In fact, the Defendants do not discuss the illegal search claim. Defendants' reply focuses only on Riggs' response to the excessive force and battery claim, seemingly abandoning their request for summary judgment on the illegal search claim.

Although the movant has not demonstrated an absence of a genuine issue of material fact, Riggs still provides evidence and uses the record to demonstrate how the illegal search claim should proceed to a jury by illustrating how he satisfies both *Heck* elements. In other words, Riggs provides enough evidence to allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action." *Midwest Media Prop., L.L.C.*, 503 F.3d at 469 (6th Cir. 2007).

First, Riggs demonstrates that the illegal search claim satisfies the first *Heck* element "because even if evidence discovered in a search incident to his arrest" caused his conviction "a determination that the search was illegal would not necessarily imply the invalidity of the

8

conviction." *Braxton v. Scott*, 905 F. Supp. 455, 458 (N.D. Ohio 1995). In *Harper v. Jackson*, the Sixth Circuit held that *Heck* "bars § 1983 Fourth Amendment claims where the contested search produced the *only* evidence supporting the conviction and no legal doctrine could save the evidence from exclusion." 293 F. App'x 389, 392 (6th Cir. 2008) (emphasis in original). In reversing the district court's decision to bar an illegal search claim based on *Heck*, the Sixth Circuit stated that if "[Plaintiff] succeeds on his § 1983 claims, his conviction would not necessarily be impugned because both the doctrine of inevitable discovery and the *Leon* good faith exception apply." *Id.* Here, Riggs contends, with no reply from the Defendants, that "the evidence suggests that the inevitable discovery rule would have applied in Riggs' criminal trial if he had not pled guilty." [DE 72 at 975]. Further, that because "Defendants had a warrant for Riggs' arrest. . . [t]hey would have eventually been legally permitted to enter." [*Id.*]. But Defendants can only enter after giving the Riggs adequate time to answer by "knock[ing] on the door and announc[ing] their identity and purpose." *Commonwealth v. Chapman*, 701 S.W.3d 566, 571 (Ky. App. 2024). Defendants must also give the individual "sufficient time to open the door voluntarily." *Id.* And at this time, it is still in factual dispute if the Trooper Defendants had complied with those requirements.

Also, Riggs asserts that Defendant "Holloman began banging on the side of Riggs' trailer" where he announced for the "*first time* that he was the Kentucky State Police and demanded Riggs exit." [DE 66 at 670] (emphasis added). This contrasts with the Defendants' timeline, where Trooper Holloman announced that he was with the Kentucky State Police while Riggs was still outside, before he shut and locked the front door. [DE 63-1 at 482]. Not only are these both questions of material fact that must be left for a jury to decide, but the difference in the timeline demonstrates that Defendants' have failed to meet their burden. *See Celotex Corp.*, 477 U.S. at 323; *see also, Sagan*, 342 F.3d at 497 (holding that the Court must "draw[] all reasonable

9

inferences" in the non-moving party). Riggs states that, based on his timeline, Defendants would have discovered the evidence and introduced it at the criminal trial. [DE 72 at 976]. This is because under the inevitable discovery doctrine, "illegally obtained evidence is not subject to the exclusionary rule 'if the government can prove by preponderance that the evidence inevitably would have been acquired through lawful means.'" *Harper*, 293 F. App'x at 392 (quoting *United States v. Kimes*, 246 F.3d 800, 804 (6th Cir. 2001). Thus, the Defendants have failed to meet their burden, and alternatively, Riggs' has successfully rebutted *Heck* element one and thus summary judgment is inappropriate.

Even further, Riggs potentially satisfies the second element of *Heck* too. Defendants' assert that because the damages language stated in the Complaint for the excessive force claim and illegal search claim are identical, *Heck* bars the claim. [DE 63-1 at 493-94]. Defendants do not cite to any case law for this proposition. Nor could the Court find any. In response, Riggs points to separate damages for banging on the front door [DE 72 at 976], kicking in the front door [*Id.*], and separate emotional distress damages. [*Id.*]. Not only do these statements represent a dispute in the material facts, but Defendants also do not address to any of assertions in their reply brief.

Lastly, Defendants' cited case law, demonstrating how *Heck* bars the applicable claims, is wrongly applied. First, *Steel v. Kelly*, appears to stand for the opposite proposition as Defendants state. 2016 WL 11618614 (6th Cir. 2016). In *Steel*, the Sixth Circuit held that "*Heck* does not create a bar to Steel's Fourth Amendment search claims" but instead dismissed the case based upon the statute of limitations. *Id.* at *2. In the other cited case, *Hunt v. Michigan*, the Sixth Circuit dismissed the case because "review of the complaint in this case reveals no such claim" while stating that "an illegal search caused Hunt compensable injury would not necessarily imply the invalidity of his conviction" and therefore allowing it to survive *Heck*. 482 F. App'x 20, 22 (6th

10

Cir. 2012). Essentially, the Sixth Circuit found that the complaint was not well pleaded. *Id.* That is not the case here.

Additionally, it is telling that Defendants' do not attempt to rebut Riggs' response in their reply. And the Sixth Circuit's jurisprudence regarding abandonment is quite strong:

> This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24–25 (6th Cir. 2003); see also *Colston v. Cleveland Pub. Library*, No. 1:12–CV–204, 2012 WL 3309663, at *2 n. 2 (N.D. Ohio Aug. 13, 2013) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her opposition to Defendants' motions for summary judgment").

*Brown v. VHS of Michigan, Inc.,* 13–1054, 2013 WL 5583818 (6th Cir. Oct. 10, 2013). Still, the Court need not rule on whether these claims were sufficiently ignored to be abandoned. Defendants' have failed to meet their burden to demonstrate that no genuine dispute of material fact exists, and thus their motion for summary judgement on the Riggs' illegal search claim is denied. *Celotex Corp.*, 477 U.S. at 323. In the alternative, Riggs' has provided enough evidence to demonstrate facts, that "would have [the] effect of establishing or refuting one of essential elements of a cause of action." *Midwest Media Prop., L.L.C.*, 503 F.3d at 469.

### ii. Qualified Immunity

#### 1. Standard

Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

11

U.S. 800, 818 (1982). In Kentucky, qualified immunity extends to individual capacity claims for discretionary acts; acts performed in good faith; and acts within the employee's scope of authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). If that is satisfied, the Court must grant the immunity. *Rowan Cnty v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006).

### 2. Analysis

Defendants alternatively contend that qualified immunity shields them from the federal claims asserted. [DE 63-1 at 498]. However, they do not cite to the record, point to any evidence, or provide any other information for the Court. Instead, Defendants' assert "[s]ince the Trooper Defendants were performing discretionary acts in good faith that were within the scope of their authority" they are entitled to qualified immunity. [DE 63-1 at 499]. That is not enough. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293-94 (1st Cir. 1995)). District courts within this Circuit have held that this principle applies to summary judgment motions, and specifically, qualified immunity arguments as the Defendants bear the burden to demonstrate qualified immunity applies. *Sanders v. City of Pembroke*, 2020 WL 4572360, at *7 (W.D. Ky. Aug. 7, 2020) (holding that qualified immunity arguments are considered "conclusory" where the defendants fail "to provide adequate factual and legal support for [their] argument"); *King v. Wells*, 94 F.R.D. 675, 686 (E.D. Mich. July 9, 1982) (holding that when defendants "set forth no facts but only state in a conclusory way" the elements of qualified immunity, that is an "inadequate basis for summary judgment"). This Court will not depart from the norm and will decline to "address whether [Defendants] [are]

protected by qualified immunity." *Id.* Therefore, the Court will deny Defendants' motion for summary judgment based upon qualified immunity.

### IV. Conclusion

For the reasons state above, and the Court being otherwise advised, the Court **ORDERS**:

i. Plaintiff's Motion for Summary Judgment [DE 66] is **DENIED AS MOOT**.

ii. Defendants' Motion for Summary Judgment [DE 63] is **DENIED as MOOT in part; and DENIED on the merits in part**.

Rebecca Grady Jennings, District Judge
United States District Court

September 29, 2025

13