UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALLEN WAYNE RIGGS                                              Plaintiffs

v.                                              Civil Action No. 3:22-cv-456-RGJ

TROOPER JAMES WRIGHT, in his                              Defendants
individual capacity, et al.,

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant Trooper James "Cameron" Wright ("Wright") moves to alter or amend the Judgment of this Court's Opinions and Orders on Defendant's Motion to Dismiss [DE 102] and Cross Motions for Summary Judgment [DE 103] pursuant to Fed. R. Civ. P. 59(e). Specifically, Wright asks the Court to alter or amend the orders denying him summary judgment on the illegal search claim and denying him qualified immunity. [DE 104-1 at 1405]. Defendants Trooper Brad Holloman ("Holloman") and Trooper Travis Dalton ("Dalton") filed a motion to join Defendant Wright's motion. [DE 105 at 1415]. Plaintiff Allen Wayne Riggs ("Riggs") responded. [DE 108]. All Defendants replied, with Wright replying individually. [DE 109; DE 110]. The motion to join the motion to alter, amend, or vacate, is **GRANTED** as it relates to joinder only. [DE 105]. For the reasons explained below, Defendants' motions on the merits [DE 104; DE 105] are **DENIED.**

## I.    Factual and Procedural Background

The factual background set forth in the Court's Memorandum, Order and Opinion on the Motions for Summary Judgment ("Order") is incorporated by reference. [DE 103].

After this Court's Order resolving the motion to dismiss [DE 102] and cross motions for summary judgment [DE 103], Wright, individually with newly retained counsel, filed a Motion to Atler or Amend the previous judgments pursuant to Fed. R. Civ. P. 59(e). [DE 104]. Then, Dalton

and Holloman filed a motion to join. [DE 105].

As the initial trial date of December 8, 2025, loomed closely, the parties filed a joint agreed order to stay all pretrial deadlines and continue the pretrial conference and upcoming trial. [DE 106]. The agreed order stated that should the pending motions "be denied, Defendants intend to file an interlocutory appeal of this Court's denial of qualified immunity." [DE 106 at 1419]. The Agreed Order also stated that Riggs would "ask this Court to certify its ruling on the excessive force claims under Rule 54(b) as a partial final judgment so that the entire case may be considered together by the Court of Appeals." [*Id.*]. The Court entered the order and remanded the upcoming deadlines. [DE 107].

## II.    Standard

The Federal Rules of Civil Procedure permit litigants subject to an adverse judgment to file a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). *Harvey v. United States*, No. 1:11-CR-24-TBR, 2017 WL 89492, at *1 (W.D. Ky. Jan. 9, 2017). The burden of showing entitlement to relief is on the moving party. *Ayers v. Anderson*, No. 3:16-CV-00572-CRS, 2018 WL 3244410, at *2 (W.D. Ky. July 3, 2018) (citation omitted).

Rule 59(e) is intended to permit a court to "rectify its own mistakes in the period following the entry of judgment." *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982). A court "may alter or amend a prior judgment under Rule 59(e) based on '(1) a clear error of law, (2) newly discovered evidence, (3) an intervening change in controlling law, or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). A Rule 59(e) motion is not "an opportunity to reargue a case" or raise arguments that could or should have been raised before the court issued the judgment. *Whitehead v. Bowen*, 301 F. App'x 484,

489 (6th Cir. 2008); *see Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Notably, Rule 59(e) motions are "extraordinary and sparingly granted." *Marshall v. Johnson*, No. 3:07-CV-171, 2007 WL 1175046 (W.D. Ky. Apr. 19, 2007); *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 n. 5 (6th Cir. 1982). Where a party simply disagrees with a district court's conclusions, the appropriate avenue for relief is to appeal the ruling, not a motion to alter or amend the judgment. *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004).

### III.    Analysis

Wright contends that the motion for reconsideration should be granted based upon prongs (1) and (4). First, he argues that the Court committed "a clear error of law" with respect to Riggs' illegal search claim because the Defendants' conduct "was analyzed collectively, rather than with the individual analysis that the Sixth Circuit requires." [DE 104-1 at 1407]. Thus, allowing Riggs to proceed to trial "would result in a manifest injustice." [*Id.* at 1409]. And second, the Court's "denial of qualified immunity to Defendant Wright also result[ed] in a manifest injustice." [*Id.* at 1410]. Holloman and Dalton join both arguments. [DE 105 at 1415-16].

#### A. Illegal Search

##### 1.  Clear Error of Law

Wright contends that the Court committed a "clear error of law" because the "Plaintiff's illegal search claim" was "analyzed collectively" rather than individually. [DE 104-1 at 1407]. To establish "clear error of law" Wright must demonstrate that this error was "so egregious that an appellate court would not affirm the judgment." *Breeden v. Exel, Inc.,* 2022 WL 1482525, at *3 (W.D. Ky. Apr. 12, 2022).

Under Section 1983, persons can only be held liable for their own unconstitutional behavior

and actions. *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). In other words, a Section 1983 claim must be individualized for each Defendant. *Mitchell v. City of Benton Harbor*, 137 F.4th 420, 438-39 (6th Cir. 2025). Wright alleges that he did "not participate in the conduct that comprises" the illegal search claim. [DE 104-1 at 1408]. Therefore, the Court committed a clear error of law. [*Id.*]. In response, Riggs states that because the "Court plainly did analyze each defendant's actions individually, and found that there was a disputed question of fact as to Wright's liability" no clear error of law was committed. [DE 108 at 1425].

At the outset, Wright mischaracterizes the factual posture of Riggs' summary judgment briefing, and the Court's subsequent Order, as it relates to the disputed facts. Wright argues that "Plaintiff's motion for summary judgment argues there are no disputed material facts in this case." [DE 104-1 at 1408]. Yet, as discussed in this Court's Order, Riggs did not move for summary judgment on the illegal search claim. [DE 103 at 1395]. He confirmed this was purposeful, as the record reflected *disputed* facts and thus summary judgment would be inappropriate. [DE 72 at 974 n.2; DE 108 1429].

Regardless, Defendants moved for summary judgment on the illegal search claim under one theory, that *Heck v. Humphrey*, 512 U.S. 477 (1994) barred the claims. This is identical to the Defendants' argument made in their motion to dismiss, which the Court had already denied. [DE 102 at 1386-88; DE 103 at 1395]. The Court stated that, "[d]efendants do not interact with any other legal standard for an illegal search." [DE 103 at 1395]. Nor did Defendants interact with any of the facts of the illegal search in their motion for summary judgment. [*See* DE 63]. As a result, the Court held Defendants' had failed to demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (holding that the movant has the initial burden to demonstrate the absence of a genuine of material fact). Defendants' argument failed to

cite to any record evidence and failed to address Riggs' Response to their *Heck* arguments in their Reply. [DE 103 at 1397; *See* DE 75]. Therefore, none of the Defendants presented any "individualized" analysis in their briefing. *Heyerman*, 680 F.3d at 647.

Nonetheless, contrary to Wright's contention, the Court conducted an individualized analysis of Wright's actions. This was explicitly discussed in the Court's recitation of the facts which included Wright's involvement in the alleged illegal search. To begin, the Court identified the standard for Riggs' illegal search claim. [DE 103 at 1395]. Stating that because "doorstep, front porch, [or] doorway" arrests are "outside arrests," these arrests fall under the more strenuous requirements for officers to conduct a protective sweep from *Maryland v. Buie*, 494 U.S. 325 (1990). [DE 103 at 1396 (quoting *United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009)]. Specifically:

> [T]he second [type of sweep] requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." The Supreme Court also "emphasize[d]" that this second kind of sweep is "not a full search of the premises," but "extend[s] only to a cursory inspection of those spaces where a person may be found" and should last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises."

*Archibald*, 589 F.3d at 295 (citations omitted).

"Therefore, to constitute a permissible sweep, the officers must demonstrate 'articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" [DE 103 at 1396 (quoting *Buie*, 494 U.S. at 334)].

The Sixth Circuit has stated that "each defendant's liability must be assessed individually based on his actions." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 639 (6th Cir. 2020). The Court recognized the *disputed* timeline of the "knocking, alleged banging, and the opening of the door

by Riggs." [DE 103 at 1391]. The Court discussed how "Wright then joined Holloman at the front" when the door was kicked in. [*Id.*]. Further, after Wright "grabbed Riggs," Wright "cleared the house for officer safety." [*Id.* (quoting Holloman Dep. 54:24-25)]. Then, "Holloman and Wright returned to the house to continue the search" where neither Defendant could confirm if Riggs, or his wife Aurora, consented to the search. [*Id.*] Thus, the Court examined "[Wright's] liability. . . individually based on his own actions" as it relates to the illegal search, and in compliance with Sixth Circuit precedent. *Hart,* 973 F.3d at 639. Based upon the record, Wright's disputed involvement in the illegal search demonstrates a question of fact, and thus summary judgment on the illegal search was properly denied. *Celotex Corp.* 477 U.S. at 323; [*See* DE 103]. This is because it is unclear as a matter of the law whether Wright's actions constituted a "permissible sweep." *Buie,* 494 U.S. at 334.

In his Reply [DE 110], and for the first time in this litigation, Wright applies the facts of this matter to the illegal search standards set out in *Buie* and *Archibald*. [DE 110 at 1448-49]. But this is too late. "A motion under rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374. Wright, and the other Defendants, had ample opportunities to present these arguments to the Court. Rule 59(e) does not allow litigants to "advance positions that could have been argued earlier, but were not." *Colter v. Bowling Green-Warren Cnt'y Reg'l Airport Bd.,* 2018 WL 775366, at *2 (W.D. Ky. Feb. 7, 2018). Further, the Court previously held that Defendants did not rebut Riggs' response to their motion for summary judgment on the illegal search claim. [DE 103 at 1400]. And the Court discussed, without resolving, "whether [the illegal search] claims were sufficiently ignored to be abandoned" by Defendants. [*Id.*]. The Court finds it improper for Wright, for the first time at this stage in the litigation, to ask the Court to consider a new argument  that could have been made earlier and at

the appropriate time. Wright had multiple opportunities to properly make these arguments. A Rule 59(e) motion is not one of them. *See Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374. Therefore, the Court did not commit "clear error" with respect to Wright as Fed. R. Civ. P. 59(e) requires.

Next, Dalton argues that "like Defendant Wright, [Dalton] was also not present for the search and accompanied Mr. Riggs to the hospital." [DE 105 at 1415]. But like Wright, Dalton's actions were also "assessed individually" in the Court's Order. *Hart,* 973 F.3d a 639. The Court stated Dalton "surrounded the house" with Wright, at the beginning of the alleged illegal search, demonstrating a coordinated operation between all the officers. [DE 103 at 1391]. Thus, Dalton was participating in the operation to arrest, and subsequently enter, Riggs' home. In the Sixth Circuit it is "well-settled that arrest warrants are not search warrants." *Archibald*, 589 F.3d at 295. Defendants can only enter after giving Riggs adequate time to answer by "knock[ing] on the door and announc[ing] their identify and purpose." *Commonwealth v. Chapman*, 701 S.W.3d 566, 571 (Ky. App. 2004) (analyzing the Fourth Amendment to the United States Constitution). Defendants must also give Riggs "sufficient time to open the door voluntarily." *Id.* And in determining whether a *Buie* violation occurred, a jury may consider pre-arrest conduct to determine if that conduct would "serve the legitimate needs of law enforcement officers." *Archibald*, 589 at 294. As stated, the second type of *Buie* sweep is only permitted, among other limitations, when the purpose is for "protecting the arresting officers[.]" *Id*. Thus as the record stands, Dalton's involvement in the disputed timeline of the guarding, banging, knocking, and entry of home present material questions for a jury to resolve. This remains true even if Dalton did not continue to search the residence after the entry because the "articulable facts" must all be "taken together" to decide whether a violation of Riggs' Fourth Amendment rights occurred. *Buie*, 494 U.S. at 334. And Dalton's primary

involvement in the arrest, guarding the back of the house with Wright [Wright Dep. 35:21-25], are "articulable facts" for a jury to consider. *Buie*, 494 U.S. at 334. Thus, the Court examined "[Dalton's] liability. . . individually based on his own actions" and in compliance with Sixth Circuit precedent. *Hart,* 973 F.3d at 639

Additionally, the Court previously stated that Defendants did not meet their initial burden at the summary judgment standard, which requires that the "movant. . .  demonstrate the absence of a genuine issue of material fact." [DE 103 at 1398]; *Celotex Corp*. 477 U.S. at 323. This is because the present record reflects a *disputed*, and individualized, assessment of the material facts relating to the illegal search claim. *Hart,* 973 F.3d at 639. It is for a jury to resolve the question of whether the "articulable facts" including, but not limited to, the guarding of the back of the house by Dalton and subsequent kicking in of Riggs' front door by Wright "taken together" justified a protective sweep under *Buie* and *Archibald*. *Buie*, 494 U.S. at 334; *Archibald*, 589 F.3d at 295. Therefore, neither Wright nor Dalton has demonstrated that they meet the demanding and "extraordinary" standard that the Court has committed a "clear error of law" that is "so egregious that an appellate court would not affirm the judgment." *Breeden,* 2022 WL 1482525, at *3; *Marshall*, 2007 WL 1175046, at *2.

Holloman also contends that the Court committed a "clear error of law." [DE 105 at 1415]. But contrary to the other Defendants, Holloman argues a novel factual and legal theory. [*See* DE 105 at 1415-16]. Holloman argues, for the first time, that that the alleged illegal search was proper because he had "consent" from Riggs wife, Aurora, and therefore the Court committed a clear error of law. [*Id.*].

To begin, this argument is procedurally improper. As stated, Rule 59(e) motions are "not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374.

8

Nor are Rule 59(e) motions the time for a Defendant "to advance positions that could been argued earlier, but were not." *Colter,* 2018 WL 775366, at *2. The Defendants moved for summary judgment on the illegal search claim based solely on *Heck v. Humphrey*, not on consent. As a result, they are limited to that in their Rule 59(e) motion. *Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374 (holding that motions for reconsiderations are "aimed at reconsideration, not initial consideration").

Even assuming the argument was procedurally proper, it still fails. Holloman's new evidence is in direct opposition to *his own* deposition testimony, which should end this meritless argument, while raising other questions of candor to the Court. [Holloman Dep. 5:17-20 ("So you are under oath. You've got to tell the truth."); Holloman Dep. 57:17-20 (when questioned if Riggs or Aurora Riggs consented to the search, Holloman replied "I couldn't say if they did.")]. Nonethless, the Defendants did not depose Riggs or Aurora, and Holloman provides no other factual support for this new claim.

In *Austin v. State Farm Fire & Casualty Co.*, this Court rejected evidence and denied a motion for reconsideration in a similar vein. 795 F.Supp.3d 977 (W.D. Ky. 2025). There, the party moving for reconsideration alleged, for the first time, new and contradictory evidence. *Id.* at 982. The Court first rejected the newly presented evidence because it was "contrary to [] prior testimony." *Id.* at 982. But the Court also rejected the evidence because, "even if [the] argument aligned with [] prior testimony" it was discoverable "prior to summary judgment" and thus it would be unjust to the other party for the Court to consider at this stage. *Id.* (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Here, the Court finds itself in a similar situation. Holloman presented, for the first time, new and contradictory evidence on his motion for reconsideration. [DE 105 at 1415-16]. As in *Austin,* the Court will not consider

new and unsupported factual evidence that is "contrary to [] prior testimony" and is not properly before the Court it at this stage in the litigation.[1] *Austin,* 795 F.Supp. 3d at 982; *Jinks v. AlliedSignal, Inc.,* 250 F.3d 381, at 385 (6th Cir. 2001) (upholding a district court's denial of a motion for reconsideration because it does not allow a litigant "a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof."). And like in *Austin,* even if Holloman's new evidence did align with his previous testimony, Holloman, along with the other Defendants, had the opportunity to depose both Riggs and Aurora. They chose not to. For all those reasons, Holloman's argument fails.

### 2. Manifest Injustice

In the alternative, Wright contends that allowing Riggs to proceed to trial based on the illegal search claim "would result in a manifest injustice." [DE 104-1 at 1409]. A showing of manifest injustice requires "a fundamental flaw in the Court's judgment that, if not corrected, would lead to a result that is both inequitable and not in line with applicable policy." *Breeden*, 2022 WL 1482525, at *5. But "[m]ere disagreement with a court's findings does not rise to the level of manifest injustice." *Id.* And the "standard precludes a disappointed litigant from attempting to persuade the Court to change its mind." *Id.*

Again, Wright provides an inaccurate statement of the record and the briefing. Wright alleges that "Plaintiff states there is no genuine dispute of material fact, and his summary judgment briefing establishes Wright was not involved in the illegal search." [DE 104-1 at 1409]. As described above, and in this Court's Order, the disputed facts demonstrate that Wright was plausibly involved in the alleged illegal search claim. And therefore, there is no manifest injustice

---

[1] Holloman also could have provided to the Court an affidavit or declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 to support his new allegations. But because his new statement directly contradicts his deposition testimony, the Court finds it noteworthy he did not provide such documentation.

for an officer facing a jury for properly alleged and disputed Constitutional violations. *See Humphrey v. Mabry*, 482 F.3d 840, 846-47 (6th Cir. 2007) (holding that where a Plaintiff alleges a violation of the Fourth Amendment, the Court finds a genuine dispute of material fact, a trial by jury is proper.)

### B. Qualified Immunity

All Defendants allege they are entitled to qualified immunity and a denial of this claim creates a "manifest injustice" entitling them to relief. [DE 104-1 at 1410; DE 105 at 1415-16]. Defendants assert that "[q]ualified immunity isn't just a defense to liability, it is immunity from the costs and burdens of a suit." [DE 104-1 at 1410 (citing *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022)). And "[s]imply raising the qualified immunity defense places the burden on [the] plaintiff." [DE 104-1 at 1410].   In response, Riggs states that "the Court observed that Defendants' argument consisted of conclusory assertions" and thus properly denied the claim. [DE 108 at 1435].

"Qualified immunity is an affirmative defense, and defendant bears the burden of pleading it in the first instance." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). And "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). To support their qualified immunity argument, in both their motion to dismiss and summary judgment briefing, the Defendants stated that since "the Trooper Defendants were performing discretionary acts in good faith that were within the scope of their authority" they are entitled to qualified immunity and the case should be dismissed. [DE 63-1 at 499].

But the Court held that the Defendants' briefing "is not enough" and no Defendant has demonstrated, or pointed to any case, that shows that statement as incorrect. [DE 103 at 1402].

The Court will not "put flesh on [the] bones" of arguments for the Defendants. *McPherson,* 125 F.3d at 996. The Defendants had the opportunity, in their motion to dismiss and summary judgment, to add factual and analytical analysis to their qualified immunity argument, which would have shifted the burden onto Riggs. *T.S.*, 742 F.3d at 635 ("the burden shifts to the plaintiff to demonstrate both that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct.") But the Defendants failed to do so. This Court has rejected qualified immunity arguments in similar circumstances. *See Sanders v. City of Pembroke*, 2020 WL 4572360, at *7 (W.D. Ky. Aug. 7, 2020) (denying qualified immunity at the summary judgment stage because the arguments were "conclusory" where "Defendants failed to provide adequate factual and legal support"). Thus, properly rejecting a qualified immunity argument, one that the Defendants had multiple opportunities to present, does not qualify as a "manifest injustice" because there was no "fundamental flaw in the court's decision." *Breeden,* 2022 WL 1482525, at *5. And as mentioned, "mere disagreement with a court's finding does not rise to the level of manifest injustice." *Id.* If the Defendants disagree, they may properly appeal to the Sixth Circuit. *See Graham ex rel. Estate of Graham*, 358 F.3d at 385.

Because no clear error of law occurred, or manifest injustice exists, Wright's motion to alter or amend the Court's previous rulings is **DENIED [**DE 104], and Holloman and Dalton's motion to alter or amend the Court's previous ruling via joinder is also **DENIED** [DE 105].

## IV.  Rule 54(b)

Previously, the Court granted the parties joint agreed order to stay upcoming deadlines. [DE 106; DE 107]. There, Riggs stated that he "intends to ask this Court to certify its ruling on the excessive force claims under Rule 54(b) as a partial final judgment so that the entire case may be considered together by the Court of Appeals." [DE 106 at 1419]. Because Riggs has failed to move

to certify as of the date of this Order, the Court will take up the issue *sua sponte* in effort to streamline the litigation. *See Liberte Capital Group v. Capwill*, 2006 WL 8468312 (N.D. Ohio Mar. 16, 2006) (conducting a Rule 54(b) analysis *sua sponte*).

### A. Standard

Fed. R. Civ. P. 54(b) allows for immediate appellate review of certain district court orders that do not adjudicate the entirety of the matter before the court. *See Hazard Coal Corp. v. American Resources Corp.*, 2023 WL 6324327, at *4 (E.D. Ky. Sept. 27, 2023). "Proper certification under Rule 54(b) is a two-step process." *EJS Props., LLC v. City of Toledo*, 689 F.3d 535, 537 (6th Cir. 2012). "First, the district court must expressly direct the entry of final judgment as to one or more but fewer than all the claims or parties in a case. Second, the district court must expressly determine that there is no just reason to delay appellate review." *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994) (internal quotation marks and alterations omitted). "This second finding is ultimately reviewable for abuse of discretion. The discretionary judgment of the district court should be afforded 'substantial deference.'" *Hazard Coal Corp.*, 2023 WL 6324327, at *4) (quoting *Curtiss–Wright* v. *Gen. Elec. Co.*, 446 U.S. 1, 2 (1980)). Rule 54(b) states,

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Rule 54(b), in a sense, "relaxes the traditional finality requirement for appellate review." *Gen. Acquisition, Inc.*, 23 F.3d at 1026. But "it does not tolerate immediate

appeal of every action taken by a district court." *Id.* "Ultimately, a district court has 'sound judicial discretion' in which to determine whether an entry of final judgment is appropriate." *Teamsters Local Union No. 89 v. Kroger Co.*, 2009 WL 2487362, at *1 (W.D. Ky. Aug. 14, 2009) (quoting *Curtiss-Wright*, 446 U.S. at 2).

### B. Analysis

#### 1. Final Judgment

The entry of a partial final judgment is "satisfied where some decision made by the district court ultimately disposes of one or more but fewer than all of the claims." *Planned Parenthood Southwest Ohio Region v. DeWine*, 2011 WL 4063999, at *2 (S.D. Ohio Sept. 13, 2011). Here, there is no question that the Court disposed of some claims, but not all. The Court laid out in both of its prior Memorandum and Opinions, that Riggs' excessive force claim, failure to interview, and battery claims be dismissed. [DE 102 at 1389; DE 103 at 1390]. But Riggs' illegal search claim has survived Defendants' collective motion to dismiss [DE 102], motion for summary judgment [DE 103], and the above discussed motion to alter or amend the judgment. Thus, the Court "dispose[d]" of some claims, but not all. *Planned Parenthood Southwest Ohio Region*, 2011 WL 4063999, at *2. Therefore, "it seems clear that this requirement is met" as the "the Court has dismissed or granted summary judgment" on some claims, but not all. *Reed v. Gulf Enterprises*, 2016 WL 3963187, at *8 (W.D. Ky. July 21, 2016).

#### 2. No Just Reason for Delay

"The second step in certification, determination of no just reason for delay, requires the district court to balance the needs of the parties against the interests of efficient case management." *Gen. Acquisition, Inc.*, 23 F.3d at 1027. "By limiting interlocutory appeals under Rule 54(b) to 'infrequent harsh case[s],' courts can alleviate hardship resulting from unnecessary delay without

undermining 'the historic federal policy against piecemeal appeals.'" *Gen. Acquisition, Inc.*, 23 F.3d at 1027 (internal citations omitted) (quoting Fed. R. Civ. Pro. 54(b)). The Sixth Circuit has instructed lower courts to use the following non-exhaustive factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like.

*Gen. Acquisition, Inc.*, 23 F.3d at 1030 (citing *Corrosioneering, inc. v. Thyssen Env't Sys., Inc.,* 807 F.2d 1279, 1283 (6th Cir. 1986)). Courts can weigh the factors unevenly on a case by case basis, and do not need to find each and every factor to certify a judgment. *See Curtis-Wright Corp*, 446 U.S. at 8 n.2.

The first factor weighs in favor of certification. The more similar claims are to each other, the more this factor weighs against certification. *See Gen. Acquisition*, *Inc.,* 23 F.3d at 1028. However, the claim of qualified immunity, illegal search, and excessive force are based upon different facts and circumstances in this matter. Although the force predicated the eventual search, the factual and legal analysis are sufficiently different to favor certification. *See Planned Parenthood Southwest Ohio Region*, 2011 WL 4063999, at *2 (stating that when claims are "separate and distinct" the first factor weighs in favor of certification); *Burkeen v. A.R.E. Accessories, LLC,* 2017 WL 5076516, at *3 (W.D. Ky. Nov. 3, 2017) (holding that certifiability was proper although the claims "arise from the same events" because "the claims are quite dissimilar" in which liability is premised); *Teamsters Local Union No. 89*, 2009 WL 2487362, at *3 (finding that factor one weighs in favor of certifiability when the claims are "substantively. . . quite distinct).

15

The second factor also weighs in favor of certification. If the Court were to deny certification, and Defendants prevail at the Sixth Circuit, Riggs would still be in his right to then appeal the matter. *See Teamsters Local Union No. 89*, 2009 WL 2487362, at *3 ("Future developments in the litigation. . .  will not moot the [] appeal."). This would be poor "case management." *Gen. Acquisition, Inc.*, 23 F.3d at 1027.

With regards to the fourth factor, there is no presence or absence of a claim or counterclaim which would impact the judgment sought, thus this factor does not weigh for, or against, certifiability. *Burkeen, LLC,* 2017 WL 5076516, at *3.

The third and fifth factor are related. "The most compelling justification for delay is judicial economy." *Teamsters Local Union No. 89*, 2009 WL 2487362, at *4. As in *Teamsters*, the Court noted that when there is a "real possibility" that the "appellate court may have to consider" multiple appeals from the same matter, certification is not only proper, but preferred. *Id.* Here, a similar scenario presents itself. If Defendants appeal and prevail, all remaining matters will be final. Thus, Riggs could then go back to the Sixth Circuit to appeal the excessive force ruling. And if Riggs then prevails at the Sixth Circuit, the matter will come back to this Court. This sequence of events could add months, maybe years, to a litigation already more than three years in its life-span. Thus, certifying the excessive force claim "ensure[s] the efficient use of judicial resources." *Estate of Pressma v. ITM Twentyfirst Servs., LLC*, 2022 WL 17861480, at *2 (W.D. Ky. Dec. 22, 2022).

Finding no just reason for delay, the Court will certify its ruling on Riggs' claim for excessive force is as a Partial Final Judgment pursuant to Rule 54(b).

## V.    Conclusion

For the reasons state above, and the Court being otherwise advised, the Court **ORDERS**:

i.    Defendant Wright's Motion to Alter/Amend [DE 104] is **DENIED**.

ii.    Defendants' Holloman and Dalton motion to Join and Alter/Amend [DE 105] is **GRANTED** as it relates to joinder but is **DENIED** on the merits**.**

iii.    The Court's excessive force ruling, dismissed in DE 102, is **CERTFIIED AS A PARTIAL FINAL JUDGMENT** per Fed. R. Civ. P. 54(b) and is a final and appealable judgment.

Rebecca Grady Jennings, District Judge
United States District Court

February 10, 2026